UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEPHAN A. GIESECKE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MOVEMENT MORTGAGE LLC,<br><br>　　　　　Defendant. | Case No. 3:25-cv-05377-TMC<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS |

Before the Court is Defendant Movement Mortgage LLC's ("Movement") motion to dismiss Plaintiff Stephan A. Giesecke's first amended complaint. Dkt. 22. For the reasons below, the Court GRANTS IN PART and DENIES IN PART the motion. The Court DISMISSES Mr. Giesecke's claims of fraudulent misrepresentation (Count I) and violation of the Washington Consumer Protection Act ("CPA") (Count III). Dkt. 19 ¶¶ 22–30, 36–49.

## I.   BACKGROUND

In June 2024, Mr. Giesecke entered into a purchase and sale agreement to sell real property to buyers who are not a party to this case. *Id.* ¶¶ 10–11. The buyers applied for mortgage financing through Movement, and their purchase of Mr. Giesecke's property was contingent on Movement's approval of that financing. *Id.* ¶¶ 11, 25.

Mr. Giesecke alleges that "[t]hroughout June and into July 2024, [Movement] provided repeated verbal and written assurances that the buyers' loan application was proceeding smoothly, and that there were no underwriting concerns threatening loan approval." *Id*. ¶ 12. Additionally, Movement knew that the buyers recently sold property of their own for $1.3 million, "providing ample funds for the required down[ ]payment" on Plaintiff's property. *Id*.

Despite this, Movement issued the buyers a loan denial letter dated July 16, 2024—the closing date of the buyers' purchase agreement with Mr. Giesecke. *Id*. ¶ 13. The buyers then presented this letter to Mr. Giesecke on July 18, 2024, terminating their agreement to purchase the property under a financing contingency. *Id*. Mr. Giesecke alleges the denial letter was "misleading and fraudulent," noting that it "was backdated, contained false representations regarding the buyers' financial status, and misrepresented the status of their application." *Id*. ¶ 14. Mr. Giesecke also alleges that "[w]ithin days of terminating the contract with Plaintiff, the same buyers received a nearly identical loan approval from Defendant to purchase another property of comparable value in a neighboring county, based on the same financial profile." *Id*. ¶ 15. According to Mr. Giesecke, this demonstrates "Defendant's knowledge that the buyers were creditworthy at all relevant times and that the denial was issued in bad faith to facilitate the buyers' breach." *Id*. ¶ 16.

Mr. Giesecke, proceeding pro se, filed a complaint in state court on April 2, 2025. Dkt. 1-1. On May 5, Movement removed the case to this Court. Dkt. 1. Movement filed its first motion to dismiss one week later, and, while that motion was pending, Mr. Giesecke requested leave to amend his complaint. Dkts. 5, 13. The Court granted leave to amend on July 7, pursuant to a stipulation by the parties. Dkts. 17, 18. Movement again moved to dismiss the amended complaint on July 28. Dkt. 22. Mr. Giesecke filed his response on August 18, and Movement

filed its reply on August 29. Dkts. 29, 30. On September 3, Mr. Giesecke filed a surreply asking the Court to strike portions of the reply. Dkt. 32.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

When pleading claims of fraud, however, plaintiffs must meet the heightened standard of Federal Rule of Civil Procedure 9(b). "Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (explaining that claims "grounded in fraud" or that "sound in fraud" "must satisfy the particularity requirement of Rule 9(b)").

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of*

ORDER ON DEFENDANT'S MOTION TO DISMISS - 3

*Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, the Court must construe a pro se plaintiff's pleadings liberally and "afford the petitioner the benefit of any doubt." *Boquist*, 32 F.4th at 774 (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). But even when considering a pro se litigant's pleadings, the Court does not assume the truth of legal conclusions presented as facts, and mere conclusory statements are not enough to support a claim. *Iqbal*, 556 U.S. at 678. "A liberal construction of a pro se complaint . . . does not mean that the court will supply essential elements of a claim that are absent from the complaint." *Boquist*, 32 F.4th at 774 (citing *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

### III.   JURISDICTION

The Court must first address whether it has subject matter jurisdiction over the case. An action brought in state court is removable to federal district court if the federal court has original subject matter jurisdiction over the action. *See* 28 U.S.C. § 1441(a). Federal diversity jurisdiction exists when more than $75,000 is in controversy and all plaintiffs are of diverse citizenship from all defendants. *See* 28 U.S.C. §§ 1332(a), 1441(a), (b).

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Mr. Giesecke claims $1.2 million in lost sale proceeds from the breach,

ORDER ON DEFENDANT'S MOTION TO DISMISS - 4

$43,200 of stock market proceeds Mr. Giesecke would have received if he invested the sale proceeds, $14,000 from prematurely liquidating his farm equipment, and $29,900 in maintenance costs. Dkt. 19 ¶ 21. Mr. Giesecke also alleges a range of medical expenses "[d]ue to the forced manual maintenance of 35 acres" and damages caused by emotional and financial distress. *Id*. These claims easily clear the $75,000 requirement.

Individuals are citizens of the state where they are domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Here, Mr. Giesecke is a citizen of Washington because he is domiciled in Shelton, Washington. Dkt. 19 at 14.

As an LLC, Movement "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Both of Movement's owners are themselves corporations—Abram's Promise, Inc. and Harris Covenant, Inc. Dkt. 4. Corporations are citizens of their state of incorporation and of the state where their principal place of business is located. *Bank of Am., N.A. v. Remington Place Homeowners' Ass'n*, 836 F. App'x 580, 581 (9th Cir. 2021); *see Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (holding that a corporation's principal place of business is its "nerve center," typically at its corporate headquarters). Abram's Promise, Inc. is incorporated in North Carolina, and its headquarters are in South Carolina. Dkt. 4. Harris Covenant, Inc. is both incorporated and headquartered in Virginia. *Id*.

Because Mr. Giesecke is a citizen of Washington while Movement is not, and Mr. Giesecke asserts claims totaling more than $75,000 in damages, this Court has diversity jurisdiction over the case.

### IV.   DISCUSSION

Mr. Giesecke sues for (1) fraudulent misrepresentation; (2) tortious interference; and (3) violation of the CPA. Dkt. 19 ¶¶ 22–49.

ORDER ON DEFENDANT'S MOTION TO DISMISS - 5

A.    **Surreply motion to strike (Dkt. 32)**

As a preliminary matter, Mr. Giesecke also moves to strike portions from Movement's reply brief. Dkt. 32. When moving to dismiss under Rule 12(b)(6), a defendant must include all arguments supporting dismissal in the initial motion. "It is well established that new arguments and evidence presented for the first time in Reply are waived." *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)). Mr. Giesecke argues that three portions of Movement's reply brief contain new arguments and should not be considered by the Court. Dkt. 32 at 1–2.

First, Movement argues on reply that Mr. Giesecke "does not allege in the Complaint and does not explain in the Response" how he relied on the allegedly fabricated loan denial letter. Dkt. 30 at 2. In doing so, Movement notes that "Plaintiff cannot amend his Complaint in a Response to a Motion to Dismiss in any event." *Id*. at 2 n.1. Mr. Giesecke takes issue with the latter statement, arguing that it should be disregarded as a new argument on reply. Dkt. 32 at 1–2. Because this statement refers to a hypothetical amendment in a document (Mr. Giesecke's response) that did not exist at the time of Movement's motion to dismiss, the Court declines to strike this argument.

Second, Movement—in an apparently erroneous reference to the third-party buyers—argues that Mr. Giesecke should sue the "sellers," rather than Movement. Dkt. 30 at 3. Mr. Giesecke asserts that Movement failed to raise this argument in its motion to dismiss, (Dkt. 32 at 2) but a review of the motion shows otherwise. *See* Dkt. 22 at 4 ("Plaintiff was not a party to the loan application, was not communicating with Movement, and fails to demonstrate any right to rely on communications between Movement and the buyers regarding the buyers' financing."). The Court declines to strike this argument.

Third, Movement argues that "a claim for fraudulent misrepresentation or omission cannot be based on matters of opinion." Dkt. 30 at 2. The Court agrees with Mr. Giesecke that Movement did not argue in its motion to dismiss that its statements were non-actionable "opinions," and the Court therefore strikes this argument from the reply. Dkt. 32 at 2. The Court does not consider Movement's arguments about whether its statements were "opinions" in ruling on Mr. Giesecke's fraudulent misrepresentation claim.

B.     Count I: fraudulent misrepresentation

Under Washington law, a plaintiff bringing a fraudulent misrepresentation claim must show the following:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

*PCF Ins. Servs. of the W., LLC v. Fritts*, No. C23-1468-JCC, 2024 WL 1299954, at *2 (W.D. Wash. Mar. 27, 2024) (quoting *Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wn. 2d 157, 166, 273 P.3d 965 (Wash. 2012)). Mr. Giesecke claims that Movement falsely represented to him that it denied the buyers' mortgage application. Dkt. 19 ¶ 22.

Movement contests nearly every element of fraud here. For example, Movement argues that "Plaintiff does not identify which facts in the financial status were allegedly false or how the status of the loan application was misrepresented." Dkt. 22 at 4. Movement also asserts that "[a]s the seller, Plaintiff was not a party to the loan application, was not communicating with Movement, and fails to demonstrate any right to rely on communications between Movement and the buyers regarding the buyers' financing." *Id.*

Overall, the complaint lacks the facts necessary to support a claim for fraud under Rule 9(b)'s heightened pleading standard. Mr. Giesecke's fraud claim appears to rely entirely on

Movement's "express representations through agents to Plaintiff (seller) that the buyers' mortgage loan application had been denied on or about July 18, 2024." Dkt. 19 ¶ 22. According to Mr. Giesecke, this statement was false because the buyers "remained qualified for financing, as evidenced by Defendant's approval of a substantially identical loan application submitted by the same buyers for a comparable property less than two weeks later." *Id*. ¶ 23. But regardless of the circumstances of the loan denial, Movement *did* deny the buyers' loan—meaning that Movement's representation of this fact to Mr. Giesecke was true.

Even if this Court found Movement's statement could be false if the underlying denial was in bad faith, Mr. Giesecke's fraud claim still fails. Mr. Giesecke alleges that Movement approved the buyers for a "substantially identical loan application" two weeks later, *id*., but omits details from which the Court could compare the two, such as the amount, rate, and term length of either loan. Mr. Giesecke also does not identify the "comparable value" of the second property, *id.* ¶ 15, or explain how he learned of the buyers' successful loan application two weeks later.[1]

Critically, Mr. Giesecke also does not allege how he relied on the bad-faith loan denial, other than "by accepting the collapse of the transaction as legitimate and foregoing available remedies." *Id*. ¶ 27. Nowhere does Mr. Giesecke explain what "available remedies" he missed or what he might have done differently if he knew the loan denial was in bad faith. Further, to the extent Mr. Giesecke alleges he was deceived by the loan denial letter itself, he has not addressed Movement's argument that "one may not bring a fraudulent misrepresentation claim for statements communicated to [a] third party." Dkt. 22 at 4 (citing *Studio 010 Inc. v. Digital*

---

[1] Although Count I focuses on Defendant's notice of the loan denial, these same omissions undermine any fraud claim based on Defendant's "repeated verbal and written assurances that the buyers' loan application was proceeding smoothly." Dkt. 19 ¶ 12.

ORDER ON DEFENDANT'S MOTION TO DISMISS - 8

*Cashflow LLC*, No. 2:20-CV-01018-DGE, 2024 WL 2274320, at *4 (W.D. Wash. May 20, 2024)). Even if such a claim were available, the alleged falsities in the denial letter—that "it was backdated, contained false representations regarding the buyers' financial status, and misrepresented the status of their application"—are far too vague to survive Rule 9(b)'s standard of particularity. Dkt. 19 ¶ 14. The Court therefore DISMISSES Count I without prejudice.

C.   **Count II: tortious interference with contract**

A party claiming tortious interference with a contract must establish five elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that the defendant had knowledge of that expectancy; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that the defendant interfered for an improper purpose or used improper means; and (5) resulting damage.

*Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc.*, 114 Wn. App. 151, 157–58, 52 P.3d 30 (2002). Mr. Giesecke claims that Movement interfered with his contract with the buyers when it "issued a knowingly false and backdated loan denial, the purpose and effect of which was to provide the buyers with fabricated justification to terminate the contract without penalty." Dkt. 19 ¶ 33.

Movement primarily contests the fourth element of the test. Dkt. 22 at 6. "A plaintiff needs to show either improper means or an improper purpose, not both, to establish the fourth element of their tortious interference claim." *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896JLR, 2022 WL 3346398, at *12 (W.D. Wash. Aug. 12, 2022). "Interference is for an improper purpose if it is wrongful by some measure beyond the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Newton Ins.*, 114 Wn. App. at 158.

Movement argues there were no "improper means" because its actions were not wrongful under some underlying statute, rule, regulation, or standard. Dkt. 22 at 6 (citing *Zunum Aero*,

ORDER ON DEFENDANT'S MOTION TO DISMISS - 9

2022 WL 3346398, at *12). Mr. Giesecke responds that "fabricating a basis for denial to facilitate buyer breach . . . is 'independently wrongful' and serves no legitimate business interest." Dkt. 29 at 14. According to Mr. Giesecke, deception can include omissions, and "a known false impression left uncorrected can form the basis of actionable deceit." *Id*.

This Court agrees with Mr. Giesecke. He alleges that Movement was aware of the contract between him and the buyers, "having received and reviewed buyer-submitted documentation that referenced the signed agreement, including financing conditions, timelines[,] and inspection contingencies." Dkt. 19 ¶ 32. He further claims that Movement "provided repeated verbal and written assurances that the buyers' loan application was proceeding smoothly, and that there were no underwriting concerns threatening loan approval." *Id*. ¶ 12. Despite these assurances, Mr. Giesecke claims that Movement issued a loan denial letter to the buyers on July 18, 2024, which was backdated to the closing day of the transaction two days prior. *Id*. ¶ 13; *see id.* ¶ 22. The buyers obtained a "nearly identical loan approval" from Movement to purchase a separate property a few days later, indicating, according to Mr. Giesecke, that Movement knew the buyers were creditworthy all along. *Id*. ¶¶ 13–16.

The claim that Movement fabricated a loan denial so the buyers could "terminate the contract without penalty" (*Id.* ¶ 33) makes it plausible that Movement, "in doing so, ran afoul of a recognized rule of law or standard of trade." *Klein Griffith Props. Grp., LLC v. Wash. State Dep't of Com.*, No. 3:22-CV-05710-BJR, 2022 WL 17848831, at *5 (W.D. Wash. Dec. 22, 2022). Mr. Giesecke cites several criminal cases which, while not directly on point, penalize conduct similarly jeopardizing real estate transactions. Dkt. 29 at 14; *see, e.g.*, *State v. Merritt*, 200 Wn. App. 398, 403, 402 P.3d 862 (2017), *aff'd*, 193 Wn.2d 70, 434 P.3d 1016 (2019) (upholding a conviction for fraudulent property appraisals and noting that "[a] fraudulent appraisal places a transaction at risk for the loan being recalled").

ORDER ON DEFENDANT'S MOTION TO DISMISS - 10

Additionally, the loan denial was plausibly an "arbitrary and capricious" action constituting improper means because it was not based on the buyers' creditworthiness but instead done to facilitate the buyers' breach of their contract with Mr. Giesecke. *See CRJ Kim, Inc. v. JKI Invs., Inc.*, 198 Wn. App. 1014, 2017 WL 993105, at *14 (2017) ("Improper means involves the method by which a defendant interferes with the contractual relationship, such as taking arbitrary and capricious action or harassing a party.") (citing *Pleas v. City of Seattle*, 112 Wn.2d 794, 805, 774 P.2d 1158 (1989)). The Court therefore DENIES the motion to dismiss with respect to Count II.

D. **Count III: CPA**

In order to plead a valid CPA claim, plaintiffs must satisfy the factors outlined in *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.* by alleging (1) an unfair or deceptive act or practice; (2) that occurs in trade or commerce; (3) that affects the public interest; (4) injury to business or property; and (5) a causal link between the unfair or deceptive act and the injury. 105 Wn.2d 778, 784–85, 719 P.2d 531 (1986). Mr. Giesecke's CPA claim is premised on Movement's "issuing [of] a knowingly false loan denial to influence contractual outcomes and benefit third parties," which, he says, "poses not only a private injury but a systemic threat to the fairness and integrity of Washington's real estate market." Dkt. 19 ¶ 41.

Mr. Giesecke has not satisfied the third element because he has alleged no threat to the public interest. "Where a transaction can be characterized as 'essentially a private dispute' rather than a consumer transaction, it may be difficult to show a public interest in the subject matter." *Shugart v. GYPSY Off. No. 251715, its Engines, Mach., Appurtenances*, No. 2:14-CV-1923RSM, 2015 WL 1965375, at *3 (W.D. Wash. May 1, 2015) (citing *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 744, 935 P.2d 628 (1997)). In such an instance, the Court looks to the following factors to determine the public's interest in the subject matter:

>(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation to others? (4) Did plaintiff and defendant occupy unequal bargaining positions?

*Id*. No factor is dispositive, nor must all factors be present. *Id*. (citing *Hangman Ridge*, 105 Wn.2d at 791). The first factor favors Mr. Giesecke, as he alleges Movement "is engaged in the business of residential mortgage lending." Dkt. 19 ¶ 2. Plaintiff does not discuss the second factor, and the third and fourth factors mitigate against Plaintiff because he was not solicited by and did not bargain with Movement.

Additionally, Plaintiff has not shown that the fabrication of loan denials has "the capacity to deceive a substantial portion of the public." *Skansgaard v. Bank of Am., N.A.*, 896 F. Supp. 2d 944, 949 (W.D. Wash. 2011) (quoting *Indoor Billboard/Wash, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 74–75, 170 P.3d 10 (2007)). Mr. Giesecke has not claimed, for example, repeated instances of similar misconduct by Movement. *See Siver v. CitiMortgage, Inc.*, 830 F. Supp. 2d 1194, 1201 (W.D. Wash. 2011) (holding that simply alleging a violation was "capable of being repeated" was "speculative" and "precisely the type of allegation[] that [is] insufficient to continue a lawsuit in response to a motion to dismiss").

Mr. Giesecke's citations to other cases involving Movement are unavailing because they concern unrelated conduct and do not show that the misconduct here—the intentional denial of loans to rescue lenders from unwanted purchase contracts—is likely to recur. Dkt. 29 at 17–18. Thus, Mr. Giesecke's CPA claim fails because he does not allege any public impact from Movement's conduct. The Court therefore DISMISSES Count III without prejudice.

## V. CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Movement's motion to dismiss. Dkt. 22. The Court DISMISSES Counts I and III without prejudice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 31st day of October, 2025.

Tiffany M. Cartwright
United States District Judge